John Adam Schmidt, Respondent, *v.* Lyman Densmore, Appellant.

42  225
82a 173

Per Holmes, Judge.

1. *County Bridges — Statute — Common Law Remedies.* — The mode of compensation to owners of lands adjoining county bridges, prescribed by the twenty-first section of the chapter concerning bridges (Gen. Stat. 1865, p. 299), must be held to be exclusive of common law remedies.

2. *County Bridges — Statute, what authority given by.* — The authority to take rock and timber from adjoining private lands, conferred by that section, is broad enough to embrace all the specified cases of building and repairing county bridges.

3. *County Bridges — Commissioner — Contractor — Agency, how given.* — The County Court, the commissioner, and the contractor or undertaker, were all alike the agents of the county, and derived their powers and authority from the provisions of the law. The commissioner could not only take the necessary materials for building the bridge, in person, but he might cause them to be taken by his proper agents. And it was not necessary that the authority should be given by express words in the contract. It resulted from the very nature of the employment.

4. *Trespasses—Act concerning, contemplates what.* — The act concerning trespasses (Gen. Stat. 1865, ch. 76, § 1) contemplates voluntary or willful trespasses only, which are committed without any lawful right, and it inflicts penalties as upon a wrong-doer.

5. *County Bridges—Materials for building, how may be taken under Statute.* — The clause in a contract between a county commissioner and a contractor for building a county bridge, which provides that said contractor was "to furnish all the material required for said bridge," does not exclude the authority conferred by the statute to procure these materials by taking them

Schmidt v. Densmore.

from the adjoining lands, in case they could not be purchased elsewhere. If such an agreement divested him of the powers conferred on him by statute through the County Court and the commissioner, and by virtue of the agency created by the contract itself, it would be in contravention of the law, and would exceed the lawful authority of the commissioner, and would therefore be void.

6. *County—Payment by, for material chargeable to contractor—How construed.* The county being compelled by operation of law to pay money which by the terms of the contract the contractor was bound to pay, as between him and the county it would amount to a payment made at his request and for his use.

### Per CURIAM.

1. *Eminent Domain, not given by implication.* — The power to take private property for public use is in derogation of property and the right of the citizen, and the authority so conferred by law must not be implied or inferred, but must be given in express language.

2. *County Bridges — Statute — Construction.* — The twentieth and twenty-first sections of the chapter in relation to bridges (Gen. Stat. 1865) were intended to apply only to cases where the county commissioner either repairs or builds the bridge by the direct employment of some person, when the contractor has failed to comply with his covenants, and have no application to the original contractor; and in that case the county pays for the materials and recovers their value, as well as the price paid for the labor of repairing, from the contractor who is in default.

3. *Damages — Appeal — Practice.* — Where plaintiff, having claimed treble damages, was allowed single damages only, and failed to appeal from the judgment of the court, but the case was carried to the District Court by defendant, it was error to reverse the decision below and award plaintiff treble damages.

*Appeal from Livingston Circuit Court.*

*Dixon & McFerran,* for appellant.

I. It was error for the District Court to reverse the judgment of the Circuit Court on the ground of the smallness of the amount of the judgment, without any appeal on the part of the plaintiff.

II. The appellant's defense was complete, as he acted under the authority of the county road commissioner; and the Circuit Court erred in refusing to instruct the jury to that effect. (Gen. Stat. 1865, p. 299, §§ 20, 21, 22; 36 Mo. 543–6; Pierce on Am. Rail. 168, and authorities therein referred to; 31 Me. 215, 216; 4 Wend. 668; 12 Mass. 466, 364.)

III. The act concerning bridges makes no distinction between

the building of a bridge originally and the replacing of one that has been carried away or destroyed.

IV. The special remedy given by the statute to respondent, for property taken for public use, is exclusive, and bars a civil action or common law remedy for compensation or damages. (Lindell's Adm'r v. Hann. & St. Jo. R.R., 36 Mo. 543.)

*Asper & Pollard*, for respondent.

I. The road commissioner can only take timber, etc., or authorize others to do so, for the county. When the county builds a bridge, or repairs one, or the commissioner does it, then he can take timber, etc., or authorize it to be done. It is then taken for public benefit, and the principle of eminent domain applies.

II. The road commissioner builds or repairs a bridge for a guarantor, when he fails, on due notice ; and then his power under sections 20 and 21 applies. (Gen. Stat. 1865, p. 299, §§ 20, 21.)

III. The principle of eminent domain does not apply to the case at bar. Here appellant was building the bridge. It was his property until accepted by the county ; a contingency which might never occur. It was taking private property for private use. (Const. Mo. art. 1, § 16 ; 2 Kent's Com. 339, 340 ; Wilkinson v. Deland, 2 Pet. 657 ; Gardner v. Village of Newbury, 2 Johns. Ch. 162 ; 11 Wend. 149 ; 6 Paige, 146 ; Norman v. Hurst, 5 Watts & S. 170 ; Soulard v. City of St. Louis, 36 Mo. 553 ; 18 Wend. 9, 12 ; 19 Wend. 658, 674.)

IV. The only thing which will relieve a party from the consequences of his trespass — *i. e.*, from the penalty — is an honest belief that the property is his own. (Gen. Stat. 1865, p. 379, § 4 ; 12 Mo. 571.)

HOLMES, Judge, delivered the following opinion.

The petition appears to have been framed under an act concerning trespasses (Gen. Stat. 1865, ch. 76). The answer admitted the cutting of the timber as alleged, but justified the act under the provision of the statute concerning bridges (Gen. Stat.

1865, ch. 53). The evidence on the part of the defendant showed that he was the contractor or undertaker, under the road commissioners of the county of Livingston, by a written contract dated September 6, 1866, for the building of a county bridge over Shoal Creek, in said county, in accordance with specifications to be exhibited by said commissioners, and concluding in these words : " Said L. W. Densmore to furnish all the material required for said bridge, and to receive, as full compensation therefor, the sum of three thousand six hundred dollars, payable in warrants on the county treasurer of said county—one-half of said amount due and payable on the delivery of the material for said bridge, and the remainder on the completion of said bridge, as hereinbefore set forth ; and to turn over and surrender to the party of the first part said bridge, when completed, upon the receipt of payment therefor. And the party of the first part agrees to put the party of the second part in possession of the right of way at said crossing, so far as necessary for the purpose of construction, and to pay for said work, as above specified, and to receive from the said party of the second part the said bridge as soon as the same is completed, and certify the fact to the County Court of Livingston county, aforesaid." It further appears that the contractor, on proceeding to the execution of the work, finding, upon diligent inquiry and search, that he could not purchase the requisite timber in the vicinity, procured the commissioner to go with him upon the adjoining lands of the plaintiff, where suitable timber was found, and with his special permission and authority proceeded to cut and carry away from thence the amount of timber trees which were required for the building of the bridge in question ; and that this was the trespass complained of.

The court below instructed the jury for the plaintiff, upon the theory that the defendant's evidence did not bring his acts in the premises within the protection of the statute relating to bridges, which provided that the commissioner might take or cause to be taken from the adjoining or most convenient lands such quantities of rock and timber as might be necessary for the building or repairing of such bridge (ch. 53, § 20), but that, having contracted to furnish the materials, he was a trespasser upon the

lands of another, without any authority of law. Treble damages were refused, on the ground that he supposed that he had a lawful right.   On appeal by the defendant to the Fifth District Court, the plaintiff was held to be entitled to treble damages, and the judgment was therefore reversed, and the cause remanded for further proceedings in accordance with that opinion; and from this judgment the defendant appealed to this court.

It is not denied, on the part of the plaintiff, that if the defendant's justification brought his acts within those provisions of the statute concerning bridges which authorize the taking of timber necessary for building bridges, and provide a special remedy for the party aggrieved, the case would fall within the decision in Lindell's Adm'r v. The Hannibal and St. Joseph Railroad Company, 36 Mo. 543, and would be determined in defendant's favor by the principles therein enunciated.   We have to consider, then, what is the proper construction of this statute in this regard, and whether it can be invoked in aid of this defense.   By this act the County Court is to determine what bridges shall be built by the county, and to order the road commissioner to contract for the building of the same, upon an estimate and appropriation previously made.   The commissioner is to let the work by contract; he cannot be the undertaker or contractor himself.   The expense of building the bridge is to be paid out of the county treasury.   The act makes provision, also, for the building of bridges, upon a petition of forty resident householders; for building bridges over water-courses which divide one county from another; for the building of bridges by road districts, and for the repair of any public bridge in the county; and whenever any such public bridge shall be repaired, the like preliminary steps are to be taken as in the case of building a bridge, and the commissioner is to have the same powers and proceed in like manner as a commissioner for building a bridge.   No commissioner is to be an undertaker, nor a security for an undertaker, for building the bridge for which he is commissioner.   The concluding sections (20–22) relate to the taking from the adjoining or most convenient lands the rock and timber necessary for building or repairing bridges, and they prescribe the mode in which a reasonable com-

pensation is to be made to the owners therefor. This mode of compensation, on the authority of Lindell's Adm'r v. Hannibal and St. Joseph Railroad Company, must be held to be exclusive of the common law remedies in cases to which it has application. The words of the statute are, that "he, the commissioner, may take, or cause to be taken," the necessary timber for the building or repairing of such bridge, and he is to build or repair a public county bridge by contract with some undertaker, and under the order of the County Court.

The several sections of the statute are to be construed together, and each section to be interpreted in view of the general object and intention of the whole act. There is the same necessity for taking private property for public use, in this manner, for the building or repairing of public bridges, in whichever of the cases provided for a county bridge is to be built or repaired. The authority given to take rock and timber on the adjoining private lands is not confined by any words to either case alone, but is broad enough in its terms to embrace all the specified cases of county bridges. The County Court, the commissioner, and the contractor or undertaker, were all alike the agents of the county, and derived their powers and authority from the provisions of the law. The commissioner was subordinate to the County Court, and the contractor was under the directions of the commissioner. They were all bound to pursue the authority given, and to act within the scope of the powers conferred. (Wolcott v. Lawrence Co., 26 Mo. 272.) In this case, the court said, in relation to the powers of the County Court and their subordinate agents in the erection of county buildings under a somewhat similar statute, that the court had no power over the subject but what was given by law; that every person who deals with the court, acting on behalf of the county, is bound to know the law that confers the authority; and that if the special and limited authority conferred by the statute is exceeded in a material matter, the county will not be bound. While they must derive all their power from the law, and keep within the scope of their authority, it is equally clear that they may exercise all the powers which are conferred upon them. When a commissioner is once lawfully appointed, he becomes

Schmidt v. Densmore.

vested with all the powers conferred by the act on such officer acting under the orders of the County Court. When an individual is employed as an undertaker, or becomes a contractor, under the commissioner, for the building or repairing of a public county bridge, he is thereby constituted the agent for the county for that purpose, and he will derive his powers from the law under his contract. There can be no question but that the commissioner had power to take this private property for the public use in this manner, or to cause it to be taken in any proper case. He had been ordered by the County Court to contract for the building of the bridge. By the contract the defendant had undertaken to build it, under the provision of the law, and in accordance with the terms of his contract. It was by virtue of this employment and the agency created under it that he was authorized to take possession of the site on which the bridge was to be erected, to employ men for the work, to procure the requisite material for construction, and to complete the bridge. There can be no doubt that he had full power to build this bridge, and for that purpose it must be implied that he might exercise all the powers which were conferred upon him as such agent by the statute, or by the commissioner acting under the statute, in the execution of his agency under the contract. The commissioner could not only take the necessary materials in person, but he might cause them to be taken by his proper agents. What he did by his authorized agent, he did himself—*qui facit per alium, facit per se.* It was not necessary that the authority either to take possession of the site, or to enter and cut the requisite timber upon private lands adjacent, should be given by express words in the contract. It resulted from the very nature of the employment. This being correct, it was wholly unnecessary that he should call upon the commissioner to make the entry in person, and assume the immediate direction of the proceedings himself. But, whatever doubt there might be upon this point, it is perfectly clear, upon the evidence admitted, that the commissioner did in fact go upon the land himself with the defendant, and directly authorize him to cut and carry away the requisite timber. The thing done was the act of the commissioner in person; the defendant was simply his

hand and instrument, and there is no ground left for charging him as a willful trespasser or a wrong-doer, as if he had been acting upon his individual responsibility and without any authority of law. The act concerning trespasses contemplates voluntary or willful trespasses only, which are committed without any lawful right, and it inflicts penalties as upon a wrong-doer. (Lindell's Adm'r v. Hannibal & St. Jo. R.R. Co., 36 Mo. 545.) It necessarily follows that the defendant had shown a complete defense to the action, and the jury should have been instructed accordingly.

It was insisted, on behalf of the plaintiff, that as the defendant had undertaken, by his contract, "to furnish all the materials required for said bridge," he was bound thereby to procure the requisite materials by purchase at private sale, at whatever cost or inconvenience to himself, and without invoking the statute power of taking the same from the adjoining lands of private owners. We do not so interpret the contract. He was "to furnish all the materials required for said bridge, and to receive as full compensation therefor the sum of three thousand six hundred dollars, payable in warrants on the county treasury," in the manner specified. It would seem to have been the object of this clause to fix the amount of compensation which he was to receive for the whole work completed, and to prescribe the manner in which he was to be paid. The proper effect of this clause is, we think, that he is to procure the materials at his own expense, and not at the cost of the county, over and above the fixed compensation. It does not exclude the authority conferred by the statute to procure these materials by taking them from the adjoining lands in case they could not be purchased otherwise. Even if it could be properly construed to bind him in terms to procure the materials by contract of sale, it would by no means follow that he would be thereby divested of the powers conferred on him by the statute through the County Court and the commissioner, and by virtue of the agency created by the contract itself. Otherwise, such an agreement would be in contravention of the law, and would exceed the lawful authority of the commissioner. If so made, it would therefore be void. The provision in question is

made for the benefit of the county, and in order that public bridges may be built at a reasonable and moderate expense.

It is further objected for the plaintiff that as the private owner is to receive his compensation out of the county treasury, in the mode pointed out by the ·statute, this expense would fall on the county and not on the contractor. We do not think that such would be the consequence. It is true that the private owner would receive his compensation from the county treasury, but under the terms of the contract the amount so paid by the county would be included in the fixed compensation or price which the contractor was to receive in full satisfaction for the whole work, materials included. The contract expressly stipulates that one-half of this price is to be " due and payable on the delivery of the material for said bridge, and the remainder on the completion of said bridge." The commissioner certainly had knowledge of the manner in which the materials here in question had been obtained, and the County Court was bound to take notice of the law which provided that they might be taken from the lands of private owners in that manner. The county authorities had, therefore, the means of notice, if not actual notice, that this claim might come against the county treasury, and they could have withheld and deducted it from the amount due the contractor, as effectually as if the contractor had agreed with the owner upon the price of timber, and drawn a warrant in his favor on the county treasury for the amount. The amount of this claim, when it had been paid by the county, would have been a valid set-off in any suit by the contractor for his stipulated price; or if, by any chance or mistake of fact, that price had been previously paid to him in full (an event which could scarcely happen, with anything like a proper attention to the business), we do not see but that the amount could be recovered back from him by the county, in an action for money had and received, or for money paid to his use and at his instance and request. The county being compelled by operation of law to pay money which by the terms of the contract the contractor was bound to pay, as between him and the county it would amount to a payment made at his request and for his use.

I am of the opinion, therefore, that the judgments both of the Circuit and the District Courts should be reversed, and the cause remanded to the Circuit Court for a new trial in accordance with this opinion.

WAGNER, Judge, delivered the opinion of the court.

As I cannot concur in the construction which has been placed on the statute concerning the erection of bridges by my brother Holmes, it will be necessary to state briefly the opinion which I entertain. His elaborate and ingenious argument to show that the contractor has, by implication, power conferred on him by law to enter on private property, and cut and take away timber and other materials, is almost of itself sufficient to negative any such authority; for if any grant to that effect existed, it ought to be in terms so plain as not to require a labored resort to inferences and implications.

The legislature, it is admitted, has the power to authorize the taking of private property for public use, by virtue of the right of eminent domain, upon just compensation being made therefor. But the power at best is in derogation of property and the right of the citizen, and is not to be extended beyond the plain provisions of the law. If it is intended to take or convert property without the consent of the owner, the authority must not be implied or inferred. It must be given in express terms, and written in plain English. Certainly there is no positive or express power, anywhere in the statute, given to the original contractor for the erection of a bridge, to invade the premises of the citizen and take his property at his own will and pleasure, without the consent or permission of the owner. Such a power can only be educed by resorting to a strained and artificial construction. The contract entered into by the defendant was for building a public bridge, and he bound himself to furnish all the materials. He then stood on the same footing as any other man undertaking to do or perform a certain work, and was to furnish his own materials as best he could.

By section 4 of the chapter in relation to bridges, it is provided that the County Court shall determine in what manner and

of what materials the bridge shall be built, and shall. order the road commissioner to contract for building the bridge, and for keeping the same in repair not less than two nor more than four years, to be determined by the court. The tenth section of the same act prescribes that the county commissioner shall let the same, by public outcry, to the person making the lowest bid, and shall take bond, payable to the county, with two good and sufficient householders as securities, in such penalty as he shall deem sufficient to cover all damage which may accrue from the breach of such contract. The bond is given to secure the building of the bridge according to the plan and specifications, and the builder is further liable for the continuance of the bridge not less than two nor more than four years, as the court shall see fit to determine.

Now, by section 16, it is provided that the County Court shall, whenever it is necessary, without delay, make an appropriation to repair any public bridge within the county; and whenever any bridge shall be repaired, the like preliminary steps shall be had as in case of building a bridge, and the commissioner shall have the same powers and proceed in like manner as the commissioner for building a bridge. This section applies in the case of a bridge where the repairs are to be made by the county, and then the commissioner proceeds to let out the contract for making the repairs in the same manner as in an original letting to build.

But the next succeeding section (17) declares that if any public bridge require repairing, which by contract is required to be kept in repair, the commissioner shall give notice in writing to any one or more of the undertakers, or to his or their securities, stating the repairs necessary to be made, and requiring the same to be done within a reasonable time. Then, if the repairs are not made within the time required, the commissioner shall employ some other person forthwith to make the same, allowing therefor a reasonable price, and may immediately collect the amount paid, with costs, before any court of competent jurisdiction. When that is done, the commissioner may take or cause to be taken, from the adjoining or most convenient lands, such quantity of rock and timber as may be necessary for the building or repairing of such bridge. (§§ 18–20.)

It will be thus seen that in no case is provision made or author-ity given to the commissioner to enter upon land and take timber or other material, except where he either repairs or builds the bridge by the direct employment of some person, when the con-tractor has failed to comply with his covenants; and in that event the county pays for the materials and recovers their value, as well as the price paid for the labor of repairing, from the con-tractor who is in default. The manner and mode of agreeing upon the value of the material so taken is provided for in section 22, as also how the compensation is to be made. But I can imagine no reasonable rule of construction by which this provision can be made applicable to the person first taking the contract of building. The commissioner is nowhere authorized to enter upon the lands of a private citizen for the purpose of taking rock or timber for the building of a bridge in the first place; much less is he authorized to delegate such authority to a third person. There is no mode pointed out by which the county can be indem-nified for the amount so paid as compensation, only in the instance where repairs are made, or the bridge is built, and recourse is still preserved against the contractors. This is the only provision made in regard to the subject, and it is fair to presume that it was only such a case that was intended to be provided for. *Expressio unius est exclusio alterius.*

Any other construction would be unreasonable. The county pays the person taking the contract when he completes the bridge. The person whose materials have been taken is not obliged promptly and at once to claim his compensation or damages. Suppose the claim is not made till after the money is paid for the erection of the bridge, and in the meantime the builder has absconded or become insolvent. The theory then would be that the county must pay, but it would have no recourse. In other words, after once paying for the materials to the contractor, it would be obliged to again pay for them to the person from whom they were taken. The law has not said any such thing, and I can see no warrant for giving it such a construction.

The court below found single damages for the plaintiff. He then moved that they might be trebled, but the court denied the

Schmidt v. Densmore.

motion, and he did not appeal. The defendant took the cause to the District Court, where the judgment was reversed and treble damages awarded. This was error. Although the plaintiff might have been entitled to the damages given him by the District Court, he did not appeal. He was not complaining, and had assigned no errors. He was therefore not entitled to a reversal in his behalf.

I think the judgment of the District Court should be reversed, and that of the Circuit Court affirmed; and, Judge Fagg agreeing with me, it will be so ordered.