GEORGIA RAILROAD AND BANKING COMPANY *v.*
MAYOR AND COUNCIL OF UNION POINT,

and *vice versa.*

1. Where in the charter of a town the legislature has granted to the municipal corporation authority " to require any railroad running through said town to make such crossings as may be needed for public conveniences," this does not confer upon the municipal authorities power to open a new street across the right of way and tracks of a railroad company whose railroad runs through such town, against the consent of the company, and without making compensation for the taking or damaging of its property for such purpose. Nor does the grant of such authority confer upon the municipality the right to exercise the power of eminent domain for this purpose.

2. The right to exercise the power of eminent domain for the purpose of laying out and opening a new street can not be implied from the grant, in a municipal charter, of authority " to establish and lay out new streets as public necessity requires."

3. The laying out and opening of a public street across the right of way and track of a railroad company, without the consent of the company, is a taking or damaging of private property for a public purpose, which requires the exercise of the power of eminent domain.

Argued December 14, 1903. — Decided March 30, 1904.

Petition for injunction. Before Judge Lewis. Greene superior court. August 11, 1903.

*Joseph B. & Bryan Cumming* and *James B. Park,* for plaintiff.
*Samuel H. Sibley,* for defendant.

FISH, P. J. The town of Union Point undertook to open a street, at a designated point within the incorporate limits of the municipality, across the tracks and right of way of the Georgia Railroad and Banking Company, without instituting any condemnation proceeding for such purpose, and without the consent of the railroad company. The railroad company brought a petition to perpetually enjoin the town "from taking or undertaking to take the land of petitioner" for this purpose, alleging that the municipality had no authority to do so, and that if certain provisions of its charter, which will be hereinafter considered, were intended to give it such authority, they were unconstitutional. At the interlocutory hearing the following judgment was rendered: " Upon hearing evidence and argument in the case, . . it is concluded that the defendant has power under its charter to open said crossing, or to have the petitioner to do so; that the charter

of the defendant is not unconstitutional. It is further concluded that such legal damages as the railroad may suffer should be assessed and ascertained under the provisions of the general law for condemning property. It is therefore ordered that the defendant be enjoined from opening up said crossing until it shall have had an inquiry into the damages as aforesaid." Neither side to the controversy was satisfied with this judgment, and we have before us two bills of exceptions, one sued out by the petitioner and the other by the defendant. The railroad company excepted to so much of the judgment as held that the defendant has power, "under its charter, to open the crossing described," or to have the railroad company to do so, and, for specific assignment of error, alleged that "such portion of the judgment is contrary to law." For further assignment of error, it alleged that so much of the judgment as held that the charter of the town was not unconstitutional was erroneous, in that the portion of the defendant's charter alleged in the petition to be unconstitutional is so, for the reason that "it fails to provide for the paying of just compensation for opening of any street across the lands of petitioner or others." The municipality excepted to so much of the judgment as held that, in order for it to cross the tracks of petitioner with its street, condemnation proceedings must be had, and damages paid, and that an injunction should issue till this be done. Section 10 of the charter of the town of Union Point provides that the mayor and council of the town shall have power " to require any railroad running through said town to make such crossings as may be needed for public conveniences," and shall have power "to establish and lay out new streets as public necessity requires." Acts 1901, p. 669. The main question in the case is whether, under these provisions of the charter, the State has granted to the municipal corporation the right to exercise the power of eminent domain for the purpose of laying out and opening streets. The exercise of the power of eminent domain being in derogation of common right, the power can not be inferred or implied from vague or doubtful language, but must be given in express terms or by necessary implication. Lewis on Eminent Domain, § 240. Another eminent author has said: " The right to appropriate private property to public uses lies dormant in the State until legislative action is had, pointing out the occasions, modes, con-

ditions, and agencies for its appropriation." Cooley's Const. Lim. (5th ed.) 653. The fact that the legislature has undertaken to confer upon the municipal corporation authority to require any railroad company, whose railroad runs through the town, to make such crossings over the road as may be needed for public convenience, does not necessarily imply that the legislature intended to confer upon the municipality the right to exercise the power of eminent domain for this purpose. It is rather a negation of such an intention; for it contemplates, not a necessity for the exercise of a power which can not be exerted without compensation for the property taken or damaged by its exercise, but a right to compel a given thing to be done without compensation. So the town construes its own charter; for its bill of exceptions is based upon the idea, and it contends here, that it has the right to open the street across the right of way and tracks of the railroad company without paying the railroad company any compensation whatever. Authority to require a crossing to be made does not involve the idea of purchasing the right to cross, either under condemnation proceedings or otherwise, but presupposes the existence of such right. The clause now in question seems to contemplate the exercise by the municipality of the police power of the State, which is exercised without compensation for the loss occasioned thereby, instead of the power of eminent domain, which can not be exercised without compensation. Certainly there is nothing in this provision of the charter which by clear and necessary implication confers upon the municipality the right to exercise the power of eminent domain.

2. It has been decided by this court that power granted to a municipal corporation to lay out and open streets, when there is no grant of power to take or damage private property for the purpose or to make compensation therefor, does not enable the municipality to lay out and open a street over the land and tracks of a chartered railway company without the consent of the company. *Brunswick & Western Railroad Co.* v. *Waycross*, 94 *Ga.* 102. In the opinion the present Chief Justice said: " Such authority can not be implied from the grant of power to lay out and open streets. In the absence of any further provision authorizing the municipal authorities to condemn property for that purpose, the presumption is that the legislature intended that the necessary

property should be acquired by contract.   A similar ruling was
made by the Supreme Court of Washington in City of Tacoma *v.*
State, 4 Wash. 64.   In delivering the opinion of the court, Stiles,
J., said :   "It may be contended that the seventh subdivision of
section 5 of the act, which is a grant of power to 'lay out, estab-
lish,' etc., 'streets, alleys, avenues,' etc., necessarily includes the
implied power to condemn lands for those purposes.   But there
have been many such contentions in the courts, and they have
been, with entire uniformity, resolved the other way, as there is
nothing in such a grant which may not be accomplished by pur-
chase of necessary lands by agreement with the owners.   A very
strong case of this kind is that of Chaffee's Appeal, 56 Mich. 244,
22 N. W. Rep. 871.   An act of the legislature of Michigan au-
thorized the City of Detroit to open, extend, widen, or straighten
streets and alleys, and to take private property therefor, under pro-
ceedings further specified in the act.   But, although the jury were
instructed by the act how they were to award compensation for
the opening of streets and alleys, nothing was said about compen-
sation for widening; and it was held that the whole act, so far as
concerned widening a street, was inoperative.   The authority re-
mained, but the method of taking was completely paralyzed, be-
cause no compensation was provided."   The Supreme Court of
Illinois took a contrary view, holding that the power to lay out
and open a new street necessarily implies and includes the power
to institute a condemnation proceeding to carry such power into
effect.   Chicago & Northwestern Ry. Co. *v.* Cicero, 154 Ill. 656.
The decision of this court in the *Waycross* case is in line with the
decision in *Markham* v. *Howell*, 33 *Ga.* 508, where it was held :
"Authority by the legislature to inferior courts of this State to es-
tablish small-pox hospitals does not authorize those courts to im-
press private property of citizens.   This power, to be exercised by
individuals, etc., does not arise by implication, but must be spe-
cially conferred by the legislature."   In the opinion Lyon, J., said :
"This is too dangerous and extraordinary power to be conferred
by implication — it must be expressly granted, and must provide
in the grant the mode of compensation, etc."   This ruling was ad-
hered to in *Markham* v. *Brown*, 37 *Ga.* 277, in which Walker, J.,
said :   "The right of the inferior court to provide hospitals for
small-pox patients, under the law, is *one thing*; but their right to

seize or impress the *private property* of the citizen for that purpose, is another and quite a *different thing.* No express power is given them in the law to do so, and we can not give it to them by implication."

The Supreme Court of Missouri held broadly that " The power to take private property for public use is in derogation of property and the right of the citizen, and the authority so conferred by law must not be implied or inferred, but must be given in express language." Schmidt *v.* Densmore, 42 Mo. 225. So, in Phillips *v.* Dunkirk, Warren & Pittsburg R. Co., 78 Pa. 177, it was held : " The right of eminent domain will not be presumed to exist in a corporation unless by express legislative grant." In Boston & Lowell Railroad Corporation *v.* Salem & Lowell Railroad Co., 2 Gray, 36, Chief Justice Shaw said : " It must appear that the government intend to exercise this high sovereign right, by clear and express terms, or by necessary implication, leaving no doubt or uncertainty respecting such intent. It must also appear, by the act, that they recognize the right of private property, and mean to respect it ; and under our constitution, the act conferring the power must be accompanied by just and constitutional provisions for full compensation to be made to the owner. . . In general, therefore, when an act seems to confer an authority on another to take property, and the grant is not clear and explicit, and no compensation is provided by it for the owner or party whose rights are injuriously affected, the law will conclude that it was not the intent of the legislature to exercise the right of eminent domain, but simply to confer a right to do the act, or to exercise the power given, on first obtaining the consent of those thus affected." The decision of this court in the *Waycross* case is in accordance with the great weight of authority ; and even if it were not, it would be controlling authority in the case under review. It is contended by the defendant in error, however, that the decision in that case is not controlling in the present one, because at the time it was rendered there was no statutory authority to which the municipality could resort for the purpose of having compensation for property taken or damaged by the opening of a street assessed ; while at the time the charter of the town of Union Point was enacted there was in existence a general law, providing the method for condemning private property for public

uses, which went into effect on December 18, 1894.    Acts 1894, p. 95 ; Civil Code, § 4657 et seq.    Undoubtedly. there is that difference between the two cases.    Still we do not think the contention is sound.    If the right to condemn private property can not be implied from the grant of authority to lay out and open streets, then a municipal corporation which, in reference to ' streets, has been granted no more authority than this, is not authorized to exercise the power of eminent domain for the purpose of opening a street, and it is only corporations or persons who *are author- ized* to exercise this power who can resort to the provisions of the act of 1894, in order to condemn private property.    The purpose of that act, as declared in its title, was, " to provide a uniform method of exercising the right of condemning, taking, or damaging private property ;" and its first section declared that "all corporations or persons authorized to take or damage private property for public purposes shall proceed as herein set forth."    The codification of the act did not enlarge its purpose, for the Civil Code, § 4657, adopts literally the language above quoted from the first section of the act.    This statute was certainly not intended to confer power, or to enlarge or supplement the meaning of any statute then in existence or which might thereafter be passed, but was simply intended to provide a general and uniform method of exercising a power which had been or should thereafter be given.    It applies only to " corporations or persons *authorized* to take or damage private property for public purpose."    The authority of a given corporation " to take or damage private property for public purposes " must be looked for in its charter.    If it is not expressed there, it must be necessarily implied from what is expressed there. When the authority is found in the charter, the method of its exercise is found in the provisions of the Civil Code taken from the act of 1894.    If the right to exercise the power of eminent domain had been conferred by the legislature upon the town of Union Point, the method for the exercise of such right would be found in the provisions of the act of 1894 ; but as this right has not, expressly nor by necessary implication, been conferred upon the municipality, the provisions of this statute have no application to anything contained in its charter.

3. The contention of the municipal corporation, that the opening of the street across the right of way and tracks of the railroad

company is not a taking or damaging of private property, "but is a mere subjection of the railroad right of way and tracks to another consistent public use, which the legislature may lawfully authorize the town authorities to impose, without any compensation or provision therefor," is contrary to the decisions of this court upon the subject. Undoubtedly the right of way and tracks of a railroad company may be subjected to another and consistent public use, provided the power to condemn the property of the railroad company for such a purpose exists and just compensation is first paid the railroad company for the damage its property will thereby sustain. But this court has held that the right of way and tracks of a railroad company can not be subjected to another and consistent public use, against the consent of the company, except under condemnation proceedings duly authorized. *Georgia Midland R. Co.* v. *Columbus R. Co.*, 89 *Ga.* 205 ; *Brunswick Ry. Co.* v. *Waycross*, supra ; *Atlantic R. Co.* v. *Seaboard Air-Line Ry.*, 116 *Ga.* 412. While all three of the cases just cited are directly in point so far as the principle involved is concerned, the ruling in the *Waycross* case is especially applicable here ; for if the contention that there is nothing to condemn, when a municipal corporation seeks to open a street across the right of way and track of a railroad company, were sound, this court would not have decided that the City of Waycross could not open a street across the right of way and tracks of the Brunswick and Western Railroad Company because it had no power to condemn the property of the railroad company for this purpose. There is nothing to the contrary in *Cleveland* v. *Augusta*, 102 *Ga.* 233, upon which the municipal corporation relies to sustain its contention. There the railroad corporation constructed, its railroad across an existing public highway or street, while here the effort is to construct a public street across an existing railroad. The learned counsel for the municipality says, in his brief : "For the correctness of the proposition that the requirement of the railroads to construct crossings is an exercise of the police power, and not a taking of private property, no better proof or argument can be presented than the opinion of this court in the" *Cleveland* case. We are entirely satisfied with the decision of this court in that case, and think the compliment paid by counsel to the able opinion delivered by Mr. Justice Little is well deserved. But there is as much difference

between requiring a railroad company to maintain a street crossing over its track at a point where such track has intersected an existing public street, and requiring a railroad company to extend a public street over its right of way and tracks, as there is between the exercise of the police power and the exercise of the power of eminent domain.    In the one case the municipal authorities do not have to acquire the right to subject the property of the railroad company to a new public use, as the railroad company acquired its right of way and constructed its track across the street subject to the existing public use, while in the other the position of the parties is reversed, and it is the municipal corporation which seeks to subject the property of the railroad company to an additional public use.    Whenever municipal authorities have lawfully subjected the property of a railroad company to the public use for street purposes, then, and not until then, can the railroad company be required to maintain a street crossing over its tracks.

In this case it has only been necessary to decide whether the municipality, under its charter, has the power to lay out and open a street across the right of way and tracks of the railroad company, against the consent of the company.    But, in determining this question, it was necessary to decide whether the railroad company had any property right which would be taken or damaged by the laying out and opening of the street across its right of way and tracks.    This last question, as we have seen, was already settled by decisions of this court which are cited above.    As the municipality has no power to exercise the right of eminent domain for the purpose in question, it has, of course, not been necessary for us to determine what would be the amount of damages, in such a case, under condemnation proceedings, or what elements would go to make up the damages.    There are many cases which hold that the expense of maintaining a street crossing over a railroad can not be taken into consideration in determining the amount of damages to be assessed for acquiring the right to lay out and establish a street across the right of way and track of a railroad company ; but that after the street has been lawfully laid out and established over the property of the railroad company, the company is bound, under statutes requiring it to maintain in good order street crossings over its tracks, to keep up such crossings at its own expense, such statutes being held to be a legitimate exer-

cise of the police power of the State. So it may be that, in most cases, the damages to be awarded for acquiring the right to subject the right of way and track of a railroad company to the public use for street crossing would be merely nominal in amount.

*Judgment reversed on the first bill of exceptions; writ of error dismissed on the second. All the Justices concur.*