## GEORGIA RAILROAD AND BANKING COMPANY *v.*
## TOWN OF DECATUR.

1. A ground of a motion for a new trial, based upon the exclusion of evidence, will not be considered, when the evidence excluded is not set forth, either literally or in substance, in such ground, nor attached as an exhibit, properly identified, to the motion.

2. Exceptions to a ruling excluding evidence in mass should specify those portions of the evidence alleged to have been erroneously excluded; otherwise the ruling will not constitute reversible error, if any part of the evidence repelled was inadmissible, though other portions of it may have been admissible.

3. The verdict was authorized by the evidence.

4. In the seventh section of the act of December 19, 1893, amending the charter of the Town of Decatur, it is provided that the town shall have full power to open, lay out, and widen streets in said town. Provision is also made for the assessment of damages sustained by owners of lots fronting on the streets opened, laid out, or changed, in consequence of the exercise of that power by the town; and further provision is made that the mayor and council may decline to accept any property assessed for public purposes, whenever, in their opinion, the award is too high. *Held*, that it was the plain legislative intent to grant to the town the power to exercise the right of eminent domain, and to condemn property for the purposes indicated in said section of the amendment.

Argued June 3,—Decided November 15, 1907.

Condemnation. Before Judge Roan. DeKalb superior court. December 1, 1906.

The Town of Decatur instituted condemnation proceedings against the Georgia Railroad and Banking Company and the Louisville and Nashville Railroad Company, as provided in the Civil Code, §4657 et seq., for the purpose of opening a new street in the town, across the track and right of way of these companies. The town entered an appeal to the superior court from the award made by the assessors, and the jury returned a verdict in favor of the railroad companies for $10. Their motion for a new trial was overruled, and they excepted.

*Joseph B. & Bryan Cumming* and *Milton A. Candler,* for plaintiff in error. *Green, Tilson & McKinney,* contra.

BECK, J. (After stating the facts.)

1. The first, second, and third grounds of the amended motion for new trial assign error upon rulings whereby the testimony of certain witnesses was excluded. The first and second grounds

are as follows: "The court erred in excluding the testimony of W. M. Robinson, a witness for the defendants, as to the cost to the defendants of constructing the crossing over the right of way of the railroad, with one railroad track thereon, and the cost to the defendant of maintaining the same." And "The court erred in excluding the testimony of the same witness as to the cost of constructing a crossing over the said right of way, should it be occupied by all the tracks for which it afforded space, and the annual cost to defendants of maintaining such crossing." Under repeated rulings of this court, these grounds will not be considered. They are incomplete, in that they do not in themselves contain the evidence, literally or in substance, that was excluded; nor is it attached thereto as an exhibit. And this court will not undertake to examine the brief of evidence to ascertain what might have been the testimony of the witness Robinson. In fact the excluded testimony should find no place in the brief of evidence. In order to enable this court to pass intelligently upon the question of the admissibility of the testimony of the witness Robinson, if he testified and his evidence was then excluded, the testimony should have been incorporated in the ground of the motion assigning error upon its exclusion, or attached thereto as an exhibit. As they stand at present, neither of these grounds assists the court in determining either the competency or the materiality of the evidence alleged to have been repelled. *Tompkins* v. *Compton, 97 Ga. 375; Russell* v. *Mohr-Weil Lumber Co.,* 115 *Ga.* 35. "A ground of a motion for new trial, complaining of the admission or rejection of evidence, will not be considered unless it is complete in itself, requiring no reference to other parts of the record to render it intelligible." *Baxter* v. *Camp,* 126 *Ga.* 369.

2. The third ground of the amended motion complains that the court erred in excluding the testimony of Thomas K. Scott, a witness for the defendants, as to the expense of providing a watchman and other safeguards for the proposed crossing, a copy of the excluded testimony being attached to the motion. The exhibit referred to in this ground of the motion for new trial consists of numerous interrogatories propounded to the witness, Thomas K. Scott, and his answers thereto. The exception to the exclusion of this testimony seems to be a general exception to the ruling out of a mass of testimony. And if our construction of

the exception is correct, the court will not be reversed for excluding this testimony offered in mass, if it appears that any portion of it was inadmissible. *Ray* v. *Camp,* 110 *Ga.* 818. And that a part of this evidence was properly excluded will appear from a consideration of the witness's answer to the fifth direct interrogatory, which is as follows: "The elements of damage both present and reasonably prospective consist of: (*a*) Taking from the railroad a valuable part of its right of way. (*b*) By depriving it of an essential part of its right of way. (*c*) It entails upon the railroad additional expense in the running of its trains across the said proposed street. (*d*) It entails upon the railroad a very large expense for the services of watching day and night to guard the passage of trains across the proposed street. (*e*) The expense, in the course of time, of providing what are termed 'safety appliances' and other safeguards. (*f*) The opening of said proposed street will entail upon the railroad greater expense in parking trains of cars on its right of way, because the trains will always have to be kept open between the boundaries of said street, and because all the trains will have to be recoupled before they can be moved; both of which operations are expensive in themselves. Taking all the foregoing into consideration, and without attempting to mention every contingency under which the opening of said street will burden the railroad with expense, I estimate the aggregate damage to the Georgia Railroad at the sum of $21,600." Certainly that portion of his answer included in divisions (*d*) and (*e*) was inadmissible, being vague and indefinite, and consisting largely of the mere conclusions of the witness, instead of giving the facts upon which his opinion was based, so that the jury might form their own opinions and estimates. And if the exception be treated as one specially directed to the exclusion of the testimony relating "to the expense of providing watchmen and other safeguards for the proposed crossing," it will be observed that this was embraced in the very portion of the answers which we have held to be incompetent and inadmissible. And the remaining grounds of the motion for new trial contain merely a repetition of the assignments of error which were properly made in the pendente lite bill of exceptions, and this will be considered later.

3. Of the motion for new trial, there remain to be considered

the general grounds contained in the original motion. The jury returned a verdict in favor of the defendant railroad corporation for nominal damages. We have searched through the record for evidence that would have required a finding for a larger amount, but have failed to discover it. If there was any evidence requiring the finding of a larger sum, it must have been in those portions of the testimony excluded; and as to the exclusion of that testimony, as we have seen above, no proper exception was made so as to bring the correctness of the exception under review.

4. Only the first of the contentions made in the pendente lite bill of exceptions is here for our decision, it being stated in the brief of counsel for plaintiff in error .that the second contention was not insisted upon. The question raised by the first conten-tion is as to whether or not the Town of Decatur had the power to condemn property, or an easement therein, for the opening of new streets, plaintiff in error contending that the town had no such power. The argument of counsel for the plaintiff in error in support of this contention is an application of the general prin-ciple that the exercise of the right of eminent domain must be ex-pressly granted in clear and unequivocal language. In the case of *Georgia R. Co.* v. *Union Point,* 119 *Ga.* 809, it was said, "It has been decided by this court that power granted to a municipal cor-poration to lay out and open streets, where there is no grant of power to take or damage private property for the purpose or to make compensation therefor, does not enable the municipality to lay out and open a street over the land and tracks of a chartered railroad company without the consent of the company;" citing and quoting a number of decisions, in this and other States, among them the case of Boston & Lowell Railroad Corporation *v.* Salem & Lowell Railroad Co., 2 Gray, 36, where it was held: "It must appear that the government intended to exercise this high sover-eign right, by clear and express terms, or by necessary implica-tion, leaving no doubt or uncertainty respecting such intent. It must also appear, by the act, that they recognize the right of pri-vate property, and mean to respect it; and under our constitution, the act conferring the power must be accompanied by just and constitutional provisions for full compensation to be made to the owner." And in the case of *Brunswick & Western R. Co.* v. *Way-cross,* 94 *Ga.* 102, it was held, that "A municipal corporation has

no more right than any other corporation to condemn property and provide the mode of assessing compensation therefor, unless authority to do so is granted by the legislature in express terms or by necessary implication. Such authority can not be implied from the grant of power to lay out and open streets. In the absence of any further provision authorizing the municipal authorities to condemn property for that purpose, the presumption is that the legislature intended that the necessary property should be acquired by contract." It must be observed that the Town of Union Point depended, as entitling it to exercise the right of eminent domain, upon that provision in its charter authorizing the mayor and council of the town to require any railroad running through the town to make such crossings as may be needed for the public convenience, "and to establish and lay out new streets as public necessity requires." And the town of Waycross based its contention, that it was vested with power to exercise the right of eminent domain, upon the legislative grant in its charter, to lay out and open streets. The soundness of the conclusions reached in the two cases just cited will scarcely be questioned. The conclusion in each was reached by the application of well-established principles to the facts of the two cases. As was said by Chief Justice Shaw, in Boston & Lowell Railroad Corporation *v.* Salem & Lowell Railroad Co., supra, "In general, therefore, when an act seems to confer an authority on another to take property, and the grant is not clear and explicit, and no compensation is provided by it for the owner or party whose rights are injuriously affected, the law will conclude that it was not the intent of the legislature to exercise the right of eminent domain, but simply to confer a right to do the act, or to exercise the power given, on first obtaining the consent of those thus affected."

But a comparison of the provisions in the charter of the Town of Decatur with the provisions in the charters of the towns of Union Point and Waycross relatively to that subject will demonstrate that they are not analogous. The act of the legislature approved December 19th, 1893 (A. 93, p. 206), amending the charter of the Town of Decatur, provides that "The mayor and council of said town shall have full power and authority to open, lay out, to widen, straighten, or otherwise change streets, alleys, and squares in said town of Decatur. Whenever the said mayor and

council shall exercise the power above delegated, they shall appoint two freeholders, and the owners of said lots fronting on said streets, alleys, or squares shall, on five days notice, appoint two freeholders, who shall proceed to assess the damages sustained or advantages derived by the owner or owners of said lots, in consequence of the opening, widening, straightening, or otherwise changing said. streets, alleys, or squares; and in case said assessors can not agree, they shall elect a fifth freeholder, . . and a finding of a majority shall stand as the award; but either party shall have the right to enter appeal to the superior court of DeKalb county within ten days of the rendition of said award; *provided,* that said mayor and council shall have the right to decline to accept any property assessed for public purposes, as above provided, whenever in the opinion of said mayor and council the price fixed, or award made, is too high or unreasonable."

In the section of the charter quoted we find both the power to open streets and provision made for the assessment of damages sustained in consequence of the exercise of that power. What other conclusion can be reached from the grant of power to open streets, and the provision for the assessment of damages sustained in consequence of such opening, than that there was a manifest legislative intent to confer the power to condemn property or easements therein? It will not do to say that "Here is no provision for 'taking' any land and paying for the land so taken. Provision is made only for *damages* and *benefits*. And damages and benefits to whom? Not to persons whose lands have been taken, but for 'the owners of lots fronting on said streets, alleys, or squares.' " If this section of the charter had gone no further than. to provide for the opening of streets and the assessment of damages sustained in consequence thereof, such a contention might have been sound; but in connection with the provision for the assessment of damages, we find the further provision that the "mayor and council shall have the right to decline to accept any property assessed for public purposes, as above provided, whenever in the opinion of said mayor and council the price fixed, or award made, is too high or unreasonable." · Reading this last provision in connection with what precedes it in the extract from the charter quoted, it seems to us that the conclusion is unavoidable that there was a plain legislative intent to grant the power to the town

to exercise the right of eminent domain, and that there is left no doubt or uncertainty respecting such intent. By a general law enacted in 1894, the mode of procedure in condemning private property for public use has been prescribed. But this regulation of the manner of proceeding. does not alter the argument as to the legislative intent from the charter provisions when granted in 1893, as above set forth.·

*Judgment affirmed. All the Justices concur, except Holden, J., who did not preside.*