ALEXANDER *et al. v.* CITY COUNCIL OF AUGUSTA *et al.*

1. The words "further construction," as employed in section 6 of the act incorporating the Augusta Canal Company (Acts 1845, p. 138), when considered in connection with the subject-matter to which they refer, should be construed as referring to repair work on the canal which was authorized to be constructed by the act, as well as to work of original construction of the canal.

2. The act approved December 27, 1845 (Acts 1845, p. 138), incorporating the Augusta Canal Company, as amended by the act approved December 18, 1849 (Acts 1849, p. 85), in so far as it authorized the taking of private property under the power of eminent domain without first paying to the landowner damages, and in so far as it provided a different method of procedure for taking property under the power of eminent domain from that specified in the act approved December 18, 1894, as now embodied in the Civil Code, §§ 4657-4688, was superseded by the adoption of art. 1, sec. 3, par. 1, of the constitution of 1877 (Civil Code, § 5729), and the act of 1894, supra.

3. In view of the ruling announced in the second headnote, it is unnecessary to deal with other questions presented in the bill of exceptions.

JULY 26, 1910.

Petition for injunction. Before Judge Hammond. Richmond superior court. August 4, 1909.

Irvin Alexander and Hugh Alexander instituted suit to enjoin the City Council of Augusta and its agents, J. J. Twiggs and J. D. McGee, from the commission of alleged acts of trespass in taking and removing certain trees and earth from the land of plaintiffs, and prayed for other relief. The defendants, in answer, alleged a right in the city to take the property under the power of eminent domain, as conferred by and in conformity with the provisions of the act approved December 27, 1845 (Acts 1845, p. 138), incorporating the Augusta Canal Company, as amended by the act approved December 19, 1849 (Acts 1849, p. 85). The object of the Augusta Canal Company, as declared in the act of incorporation, was to "provide for the construction of a canal for manufacturing purposes and for the better securing an abundant supply of water for the city" of Augusta. The provisions of the act which related to the manner of obtaining a location for the construction of the canal were contained in sections 5 and 6, as follows: "Sec. 5. And be it further enacted by the authority aforesaid, that in case the line of said canal, or the race-ways, wasteways, or tow-path therewith connected, shall pass through the lands of any person or persons with whom the present commissioners, or

54

their successors, or the future managers of said canal, hereafter to be elected, as provided in the second section of this act, have not made or can not make a satisfactory agreement as to the terms upon which the same may be extended over or through such lands, the said commissioners, or their successors, or the said managers, as the case may be, shall nevertheless have the right to establish, open, and construct the said canal, race-ways, water-ways, [waste-ways] and tow-paths through and over the same, and that the damages, if any, sustained by the proprietor or proprietors of such lands shall be ascertained and assessed by five appraisers, of whom two shall be nominated by said commissioners or managers, two by such proprietor or proprietors, and the fifth by the four so nominated, whose award, or that of a majority of them, certified in writing under their hands and seals, in duplicate, one part for each of the parties in interest, shall be recorded in the office of the clerk of the superior court of the county in which such lands are situated; and if not appealed from, as hereinafter provided, shall operate as, and have the force and effect of, a judgment vesting in said company the right of way over and through such lands; upon which award, so recorded, and not appealed from, if any sum is thereby awarded as damages to said proprietor or proprietors, the said clerk shall, after the expiration of thirty days from the time of the record thereof, issue execution for the same, under the usual form of executions founded upon judgment of the court, returnable to the next superior court of said county, which execution may be levied on any property of the company, either real or personal. But in case either of the parties should be dissatisfied with the decision or award of the said appraisers, such dissatisfied party or parties may, within ten days after the recording of the same, exercise his, her, or their right of appeal, by making known his, her, or their intention, by a written notice served upon the adverse party, and upon the said clerk, whose duty it shall be thereupon to suspend the issue of execution, and enter a memorandum of such appeal on the appeal docket of his court, to be tried by a special jury at the next term, which trial shall be final, vesting in the company the said right of way, and, in case of damages, entitling the person for whom they are found to a judgment and execution therefor. Provided, that the appraisers hereinbefore mentioned, before entering upon the discharge of their duties as such,

[shall] severally take and subscribe an oath before some judicial officer of the State, well and truly and impartially to determine and award in the premises. Sec. 6. And be it further enacted by the authority aforesaid, that in case it should be necessary, in the further construction or future extension, deepening, or widening of said canal, or its race-ways, waste-ways, or other improvements or works therewith connected, to use any earth, clay, stone, gravel, or other materials, on or near the line of said canal or other works, and the said commissioners or managers, and the proprietor or proprietors of the land from which such earth, clay, stone, gravel, or other materials are to be taken, can not agree upon the terms on which the same may be procured for the purposes aforesaid, it shall nevertheless be lawful for said commissioners or managers to take and use the same, and the damages, if any, shall be assessed, the right of appeal, if desired, exercised, and the ultimate award or judgment shall be enforced as provided in the preceding section of this act, in relation to the right of way, and assessment and collection of damages awarded by the appraisers, or found by a special jury on appeal. Provided, that no difference or disagreement between the said company and any landholders shall be a ground for injunction against said commissioners, managers, or company, or otherwise suspend or impede any of the works contemplated in this or the preceding section of this act, which shall proceed without delay or interruption, upon the said commissioners, managers, or company tendering to such landholder sufficient security for the payment of such damages as may be so assessed or found for him as aforesaid; upon the sufficiency of which said security the judge to whom application may be made shall decide, and who, if he deems the same insufficient, shall require other or additional security to be offered within three days; on the failure or refusal to give which, an injunction may issue; but any injunction granted against said commissioners, managers, or company shall be dissolved so soon as such security as the judge of the superior court of the Middle district of this State may deem sufficient shall have been given by said commissioners, managers, or company."

The act of 1849 was an act to amend several acts in relation to the City of Augusta, and to amend the act passed on December 25, 1845, to incorporate the Augusta Canal Company. It provided, that upon being authorized by a vote of the stockholders in said

company, the corporation should "be authorized to sell, transfer, and convey to the City Council of Augusta the canal, its appurtenances, and all other property and effects belonging to said company, upon such terms and stipulations as may be agreed upon," and that "upon such purchase and conveyance the City Council of Augusta shall be vested with all the power, authority, and privileges conferred on said company by the act incorporating it, and shall be subject to all the liabilities therein prescribed." The act further provided: "That, in case of such purchase and conveyance, the corporate power and authority of the City Council of Augusta shall be extended over, upon, and for one hundred feet on each side of the said canal, through its whole extent, and to Stalling's island above Bull sluice in Savannah river, so far as to allow the said City Council to pass all ordinances and perform all acts necessary to the use of said canal, and the protection of it and its appurtenances from injury. And be it further enacted, that if the City Council of Augusta shall at any time hereafter deem it advisable to sell and transfer the said canal and its appurtenances to any individual or individuals, they shall be authorized to do so by ordinance passed by them for that purpose; and thereupon the purchaser or purchasers from them shall be vested with all the powers and privileges and subject to all the liabilities specified in the act incorporating the Augusta Canal Company."

The judge refused the injunction, and the plaintiffs excepted.

*Lamar & Callaway,* for plaintiffs.

*C. Henry Cohen* and *Austin Branch,* for defendants.

ATKINSON, J. 1. The record discloses that the material taken from the land was intended to be used in making repairs to the Augusta canal. It was urged that the power of eminent domain conferred by the act of 1845, as amended by the act of 1849, properly construed, did not extend to the right to take material for repair work, but was restricted to taking it for work of original construction. In making this contention counsel referred to certain language contained in section 6 of the act of 1845, which declared that the power of eminent domain might be exercised for the purpose of obtaining certain material necessary to be used in the further construction, future extension, deepening, or widening of said canal, or its raceways, wasteways, or other improvements or works connected therewith; and asserted that the repairs to the banks of the

canal more than 50 years after the construction thereof were not contemplated. This construction of the act is too narrow. One of the declared objects intended to be accomplished by the construction of the canal was the better securing of an abundant supply of water for the. city. The matter of creating and maintaining the canal was a thing to be accomplished by artificial means. The nature of the artificial waterway was not such as that when once constructed it would remain so permanently. On the contrary, it was such that natural agencies would tend to its destruction, and the object to be accomplished would fail unless the work of maintenance were kept in progress. As to such an enterprise, the work of construction would never be at an end. Considered in the light of the subject-matter which the legislature had under consideration, the words "further construction," as contained in the act of 1845, should be construed as referring to repair work as well as work of original construction.

2. It was contended that in so far as the act of 1845, set forth in the statement of facts, incorporating the Augusta Canal Company, as amended by the act of 1849, authorized the exercise of the power of eminent domain, it was repealed and superseded by art. 1, sec. 3, par. 1, of the constitution of 1877 (Civil Code, § 5729), which declared that "private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid;" also that it was superseded by the act approved December 18, 1894 (Acts 1894, p. 95), "to provide a uniform method of exercising the right of condemning or taking private property," as now contained in the Civil Code, §§ 4657 to 4688, inclusive. The act of 1845, above mentioned, properly construed, authorized the taking of property before actual payment of damages to the landowner. The constitution of 1877, supra, forbade it. By art. 12, sec. 1, par. 3 and 4, of the constitution of 1877 (Civil Code, §§ 5934, 5935), existing laws not in conflict with the constitution of the State, or with the supreme law of the land, were preserved, but there was no provision for saving existing laws which were repugnant to the constitution. The legislation provided in the act of 1845, that property might be taken before actual payment of damages to the landowner, and the provision in the constitution of 1877, which declared that private property should not be taken without compensation being first paid, were inconsistent, and the

latter repealed so much of the former as authorized the taking of property without first making payment of the damages incurred. The act of 1894, supra, was a general law, and provided different procedure from that prescribed by the act of 1845 for taking property under the exercise of the power of eminent domain. This general law did not specifically name the act of 1845, but it was so comprehensive as to make it apparent that the general law was intended to repeal all existing legislation, local as well as general, in regard to the method of exercising the power of eminent domain. Where such intention exists, a general law will repeal a local law, though it is not specially named. *Crovatt* v. *Mason,* 101 *Ga.* 246, 252 (28 S. E. 891). The general law did not purport to confer upon any corporation the right to exercise the power of eminent domain, but only to provide in what manner corporations having the right to exercise the power might exercise it. *Georgia Railroad Co.* v. *Union Point,* 119 *Ga.* 809 (47 S. E. 183) ; *Georgia Railroad Co.* v. *Decatur,* 129 *Ga.* 502 (59 S. E. 217). In so far as the act of 1845 provided a different method of exercising the right of eminent domain from that prescribed in the act of 1894, it was superseded by the latter act. Hence, by giving effect to the constitution of 1877, in the manner above indicated, and to the act of 1894, the act of 1845, as amended by the act of 1849, was superseded in so far as it authorized the taking of private property under the power of eminent domain without first paying the damages, and in so far as it authorized the taking of such property under condemnation proceedings different from those specified in the act of 1894. In support of the contrary view, it was argued that under the doctrine of the Dartmouth College case, as recognized and applied in the case of *Gardner* v. *Georgia Railroad Co.,* 117 *Ga.* 522 (43 S. E. 863), the city acquired, under the act of 1845, rights which could not be taken away. Art 1, sec. 3, par. 1, of the constitution of 1877 (Civil Code, § 5729), requiring the payment of damages before the taking of property under the power of eminent domain, and the act of 1894, prescribing the procedure under which private property may be taken for public purposes, should not be so applied as to work an impairment of any contract or destroy any vested right acquired under the act of 1845. The constitution expressly prohibits such application. Art. 4, sec. 1, par. 6 (Civil Code, § 5802) ; art. 12, sec. 1, par. 5 (Civil Code, § 5936). But neither the constitution

nor the act referred to had such effect. The former allowed the power of eminent domain to be exercised, but only provided that damages should be paid before the property could be taken. The latter merely provided a different method of taking property under the power of eminent domain by persons having the right to exercise it. These changes in the law were remedial in character, and did not impair any contract or impair any vested right under the doctrine of the Dartmouth College case. The case differs from *Gardner* v. *Georgia Railroad Co.*, supra. That case involved the act approved December 14, 1835, amending the charter of a railroad corporation, wherein it was expressly declared that under the power of eminent domain the decision rendered in the condemnation proceedings provided for "shall vest in the company the fee simple of the land in question." Georgia Laws 1834-5, p. 217, sec. 15. In the case cited it was said in the opinion that under the act of 1894, providing a method of taking property, etc., only an easement in the property could be acquired, and that there was a substantial difference between such an estate and the fee simple which could be acquired under the act of 1835, supra; and thereupon it was declared that in so far as the act of 1894 was inconsistent with the exercise of the charter rights specified in the act of 1835, it had no application to the defendant company. The act of 1894 does not declare that the only interest in the property appropriated under its provisions which would pass to the person exercising the power of eminent domain would be an easement, but its language relative to that matter is, "such an interest in the property taken as may be necessary to enable the corporation or person taking to exercise their franchise or conduct their business; and whenever the person or corporation shall cease using the property taken for conducting their business, the said property shall revert to the person from whom taken, his heirs or assigns." Under this language any interest might be taken which would be necessary to a proper exercise of the franchise or conducting of the business. The necessities of the franchise might require an absolute conversion of the property, such as earth taken for the construction of railroad beds, etc. The act of 1845, as amended by the act of 1849, being the act involved in the present case, did not declare in express language that the judgment in the condemnation proceedings provided for therein should vest the fee to the property

in the person exercising the power of eminent domain. It merely declared that the trial should be final, "vesting in the company the said right of way." It did no more than authorize the taking of property for specified purposes, which, in effect, limited the use of property to the purposes specified, so that the person taking acquired such interest therein, but no greater or less interest, than was necessary for the enjoyment of the franchise. This was in keeping with the general rule that in condemnation proceedings corporations acquire only such interest in the property taken as may be necessary for the enjoyment of the franchise. Whatever might have been the difference in the character of the estate acquired when the property was taken under the act of 1835 from that when acquired under the general law of 1894, the same difference did not exist where the property was taken under the provisions of the charter of the Augusta Canal Company, as granted by the act of 1845 and amended by the act of 1849. In the latter case the interest acquired would be substantially the same as that which could be acquired if the property were taken under the general law of 1894. It thus appears that the constitution did not deprive the corporation of its right to exercise the power of eminent domain, and that the act of 1894 did not restrict the character of the estate which, under the provisions of the act of 1845, the corporation could have acquired in property taken under the power of eminent domain. The substantial rights were unaffected. The provisions of the former act relative to proceedings by which property might be taken were not subject-matter of substantial right in the party undertaking to condemn.

3. In several grounds of the bill of exceptions complaint was made that the act of 1845, as amended by the act of 1849, was unconstitutional; but the record does not disclose that these complaints were made in the pleadings or otherwise, so as to show that the question as to the constitutionality of the act was made before the trial court and decided. Other assignments of error relate to a construction of provisions of the act of 1845 in regard to the method of procedure in taking private property under the exercise of the power of eminent domain, and the application of such provisions of the act of 1845 to the present case. Under the statement above made, no constitutional question is presented for decision; and as the act of 1845 has been superseded, in so far as it refers to

the method of procedure in the matter of taking private property under the power of eminent domain, it is unnecessary to deal with the questions relative to such procedure.

<div style="text-align:center">

*Judgment reversed.    All the Justices concur.*