TRUSTEES ATLANTA UNIVERSITY *v.* CITY OF ATLANTA.

1. Under the grant of power in the charter of the City of Atlanta "to open, lay out, widen, straighten or to otherwise change streets, alleys and squares in said city," the corporate authorities may condemn for the public use the whole or any part of the right of a private corporation to maintain one or more bridges across one of the public streets, and, after condemnation and payment of adequate compensation, may remove a bridge already erected and prevent the erection of any other at any place to which the right of the private corporation to bridge the street extends or applies. This is true although the easement sought to be appropriated or extinguished in whole or in part may be grounded upon a contract heretofore made between the city as one party and the private corporation as the other, in which the city fully recognized the easement and agreed that it might be perpetual.

2. A resolution of the mayor and general council which provides for the appointment of assessors to ascertain and fix the damages which will accrue to a private corporation by the appropriation of

its property to municipal purposes, is not sufficiently certain and definite as to the interest in the roadway of Hunter street which is to be appropriated, the description being in these terms: "whatever property rights the Atlanta University has in the roadway of Hunter street and in the privilege heretofore exercised of bridging Hunter street within its grounds." But this description is sufficiently certain and definite as to the privilege already exercised of bridging the street. Condemnation of this privilege, however, would leave untouched any privilege of bridging the street elsewhere than at the particular location of the existing bridge.

3. In view of the law above announced and of the limited scope of the resolution of the mayor and council, the judge did not err in denying the injunction prayed for, the resolution being nugatory as to rights in the roadway of the street, silent as to the bridge privilege not as yet acted upon, and lawful as to that privilege so far as exercised heretofore.

November 6, 1893.

Petition for injunction. Before Judge MARSHALL J. CLARKE. Fulton county. August 17, 1893.

The Trustees of the Atlanta University, a corporation, brought its petition against the City of Atlanta, for injunction against further prosecuting certain proceedings to condemn a bridge, etc., and from interfering with the bridge. The injunction was denied, and the plaintiff excepted. The petition alleges the following: In 1872 plaintiff was the owner of a body of land in the western part of the city, used for the purposes of a university, on which were two large brick buildings about 270 feet apart. Vine and Hunter streets terminated at or near the eastern boundary of the land, and the city desired to extend these streets through it. To reduce Hunter street to a proper grade, if extended, it was necessary to excavate it below the level of the surface of the land. Such excavation would separate plaintiff's grounds and buildings, and greatly impair their value and usefulness. In order to let the city have the streets, and at the same time connect the property and buildings in view of the cut to be made by lowering the

street, a written agreement was entered into, by which the plaintiff was to give the city a quitclaim deed to such land as would be occupied by the streets, upon the completion of the grading as specified, upon the following conditions: The city was to excavate the streets their full width, including sidewalks, so that at the point of their intersection they should be twelve feet below their then level at that place. The plaintiff was to have the right to construct bridges at any time over Hunter street at any point within the limits of the plaintiff's grounds, at a height of not less than twelve feet above the center of the street at such point, and to support such bridges at the curbstones or water edges of the sidewalk by timber or piers not exceeding twelve inches thick. The agreement was dated May 24, 1872, and provided that after the first of the following October no change should be made in the grade of the street within the plaintiff's grounds, without the plaintiff's consent. In pursuance of the agreement, the city at once made the excavation and extended Hunter street, thirty feet in width, about one thousand feet through the land; and plaintiff at once constructed a bridge in accordance with the right reserved in the grant. The street as thus extended has ever since been used as a public street, and the bridge has ever since been kept up and used by plaintiff. The grounds were then and have ever since been used for university purposes. The entire property has been improved with reference to its use as a whole, and on the faith of the agreement by which plaintiff was enabled to connect its grounds and buildings by the bridge. These buildings cost about $110,000; two of them are south of Hunter street as now extended; the other is north of it, is kept for the purpose of a university, has in it one hundred or more students, and is heated by pipe brought from the middle building over the bridge,

which heating apparatus has cost several thousand dollars and is the only means plaintiff has of heating said building. The building has been in constant use by plaintiff since its construction. During the last year Hunter street along plaintiff's property was widened ten feet on the north side. Afterwards ten other feet were condemned by the city and added to the street, making it fifty feet wide. The earth from the twenty feet thus added was not removed from the north end of the bridge, and it remains there. The city has recently paved the street and has paved around that earth. On March 7, 1892, the city council adopted a report of the joint committee on streets and bridges, recommending that condemnation proceedings be had to exhaust whatever property rights plaintiff had in the road-bed of Hunter street or in the privilege of bridging Hunter street. The council also appointed two assessors to act for the city in the condemnation proceedings, and the city clerk has notified plaintiff to appoint appraisers to represent it in assessing the damages from the condemnation of the bridge, etc. The bridge is in strict conformity to the right reserved when the grant was made to the city, except that it is higher than twelve feet above the street. It rests on plaintiff's land at both ends, has always been used for the purposes of the property and university, and does not obstruct the street or its use. In addition to the public use of the street, an electric car line has been placed thereon, and it is now used in that way and fully meets all the demand of the present. The city has no charter power to condemn plaintiff's rights to place bridges over Hunter street in its grounds. If the city had any such power generally, it could not exercise it in this instance, because of the contract of 1872. If the city had charter power to condemn a bridge privilege, this proceeding is void because no necessity exists for the condemnation; and the proceeding is a gross

abuse of power if it exists. Plaintiff claimed no right in the roadway of Hunter street, because the right to the street was granted in 1872, with the reservation of the right in plaintiff to bridge the street. Plaintiff supposes that the city seeks now to repudiate the agreement by which it obtained the street, and begin anew. It proposes to condemn whatever property right plaintiff has in the roadway of Hunter street, without determining what the right is or its extent. The assessors are sent out in the dark to find the right and then value it. They have no power to determine what right exists. If defendant is allowed to proceed, it will cause irreparable damage, etc.

The city demurred to the petition as setting forth no cause of action, and for want of equity; and made answer as follows: Hunter street was already an established public thoroughfare prior to the purchase of the land by the plaintiff and before the erection of the university buildings. In view of this fact, the agreement set up by the plaintiff was without consideration, and for that reason is not binding on the city. While in this agreement it was proposed to give the city a quitclaim deed to such land as might be occupied by the extension of Hunter and Vine streets, it is nevertheless true that the land in these streets was already the property of the city or of the public, by reason of having been previously dedicated to and used for street purposes; so that the plaintiff passed nothing of value by the quitclaim deed. The bridge erected by the plaintiff was an obstruction to Hunter street, and was in law an encroachment which the city or the mayor and council had no power to authorize or ratify; such encroachment has been by mere permission or license revocable by the city at any time, and in fact revoked by the institution of the condemnation proceedings. If the assessors appointed under the city charter make a

mistake to the prejudice of plaintiff, such mistake is not final but is capable of correction on appeal proceedings before the judge and a jury in the superior court. The city by its charter has "full power and authority to open, lay out, to widen, straighten, or otherwise change streets, alleys and squares in the City of Atlanta." The removing of this obstruction on Hunter street is clearly within this charter power. The city is solvent and able to respond to the plaintiff in damages which may be recovered on account of the removal of the bridge; and it offers to give such bond and security as the court may require, to answer to the plaintiff in any sum it may recover as damages in this behalf. The condemnation proceedings were intended to apply to whatever land in the roadway of Hunter street actually belonged to the plaintiffs, and also to all the bridge privileges reserved by the plaintiff in making the agreement set out in the petition. And defendant offers so to amend the resolution providing for the condemnation as to make the scope of the proceeding clearly embrace all of said privileges so reserved.

At the hearing the plaintiff introduced the resolution of the city council of March 7, 1892, set out in the opinion; also, a resolution of the council of May 3, 1872, reciting that the street overseer had been ordered by the plaintiff not to work out Hunter street, alleging that the street was private property, etc., wherefore it was directed that a special committee look into the matter and ascertain whether or not the city had any vested rights in the street, and if any, to cause the work to be done at once; also, a resolution of May 10, 1872, that the city engineer and city attorney be instructed to confer with the plaintiff to arrange for working and defining Hunter and Vine streets, taking deeds to the same. Also, the agreement of May 24, 1872, as embodied in a resolution of the council, already fully set forth; and a

further resolution of the same date, reciting that the difficulties existing between the mayor and council and university had been amicably settled, and directing a street force to be placed on Hunter street. There was conflicting evidence by affidavits, those for the city being to the effect that Hunter street was an open public road or thoroughfare for many years before the purchase of the university grounds by the plaintiff, that it had been located and opened by commissioners and worked as a public road before the plaintiff's purchase, etc.; while those for the plaintiff tend to show that Hunter street before the year 1872 terminated east of the plaintiff's property, that there was no indication of a public street west of the point where Hunter intersected with Tatnall street, etc.

JOHN L. HOPKINS & SONS, for plaintiff.

J. A. ANDERSON and FULTON COLVILLE, for defendant.

BLECKLEY, Chief Justice.

1. One of the charter powers given by statute to the City of Atlanta is "to open, lay out, widen, straighten, or to otherwise change streets, alleys and squares in said city." Acts of 1874, p. 131; City Code, §60. This grant is comprehensive enough to embrace the alteration of a street in any respect, whether on, below or above the surface of the earth. And the power to open streets embraces the power to keep them open, not only at the surface but over and above the same indefinitely, or, at all events, to such height as may be either necessary or reasonably desirable for all the purposes of a street, both with reference to its use by the general public and to its use locally by those residing or having property adjacent thereto. A street is not like a tunnel in the air, having its base on or in the ground and mounting upward to a definite height, but is more like an open cut through the air from the ground up to

the sky or to an indefinite elevation.   Under the grant
of power above recited, the city authorities may remove
a bridge spanning the street and prevent the erection
of any other at the same place or elsewhere, thus open-
ing and keeping open the aerial space which is no less
a part of the street than is the space occupied by it on
or in the ground.   To do all this, however, as against
any vested right which the Atlanta University may have
to maintain one or more bridges across the street in
question to facilitate passage from its property abutting
upon one side of the street to its property abutting upon
the other side, would involve the condemnation of such
right and the payment of adequate compensation for
this appropriation of private property.   Of course the
compensation would not be adequate unless .it compre-
hended not only the value of the right but also the
value of the structure removed.   The condemnation and
compensation would have to embrace everything taken,
though the city would not be obliged to take the whole
right but might take the present bridge alone, together
with the right of maintaining it, leaving the right of the
university to erect and maintain bridges elsewhere over
the street unaffected.   It is contended that because the
right of the university to have and maintain the exist-
·ing bridge and to erect others is grounded upon a con-
tract heretofore made by the university with the city,
in which the latter fully recognized the right and agreed
that it might be perpetual, this contract is sacred and its
obligation would be impaired by the appropriation now
contemplated.   We think this contention is unsound·
There is no inconsistency between a grant in its terms
perpetual and a subsequent resumption of the property
granted, this resumption being made for public use and
in the exercise of the right of eminent domain.   The
State itself could not grant an easement which would
not be subject to resumption in the exercise of this right,

and certainly the city could not. It is no revocation or violation of the grant under which private property is held to take it for public use, on making adequate compensation to the owner. On the contrary, the proceeding to condemn and take, if it has self-consistency, concedes the sacredness of the grant and the creation thereby of all the attributes of ownership which can arise by inviolable contract. Reduced to its essence, a constitutional exercise of the right of eminent domain is not deprivation of property but a compulsory exchange of one kind of property for another, or rather a compulsory sale of property for money, an exchange of equivalent values. The right of the university, granting it to exist as claimed, is an easement,—a servitude to which the street is subject, and is realty as distinguishable from personal property. This easement, in whole or in part, is subject to be taken for the public use at the will of the State. The State, by its legislature, has conferred upon the City of Atlanta the power to condemn and make compensation for private property for municipal purposes, and as above shown, has granted power to open, lay out, widen, straighten or to otherwise change streets. We think the power of condemnation is comprehensive enough to embrace any realty which may be needful for appropriation by the city in opening, laying out, widening, straightening or otherwise changing any streets within the city, the language of the charter of 1874, section 60 (*supra*), being as follows: "The said mayor and general council shall have full power and authority to open, lay out, to widen, straighten or otherwise change streets, alleys and squares in the said City of Atlanta. Whenever the said mayor and general council shall exercise the power above delegated, they shall appoint two freeholders, and the owners of said lots fronting on said streets or alleys shall, on five days' notice, appoint two freeholders, who

shall proceed to assess the damages sustained or the advantages derived by the owner or owners of said lots in consequence of the opening, widening, straightening or otherwise changing said streets or alleys, and in case said assessors cannot agree, they shall select a fifth freeholder ; the said assessors to take an oath that they will faithfully discharge their duties, and either party to have the right to enter an appeal to the superior court of Fulton county within ten days from the rendition of said award." Subsequent amendments of the charter, while they vary somewhat the details of the procedure, do not restrict the power of condemnation itself. On the contrary, the act of August 21st, 1891 (Acts of 1890–1, vol. 2, p. 449), extends the power so as to embrace "lands for sites for the erection of public buildings . . for parks and for other public purposes."

The contention of the city in its answer and in the argument made here by its counsel, to the effect that the university had a mere license but no right to bridge the street, is inconsistent with the condemnation proceedings which the city itself inaugurated, and is therefore entitled to no consideration in the present case, whatever would be its force under other circumstances. If the city intended to treat its contract of 1872 with the university as having the force only of a mere license subject to revocation, it should not have appointed assessors to act in the condemnation of the property rights of the university in the privilege heretofore exercised by the university in bridging the street, and invited the university to unite with itself in conducting the condemnation proceedings. By its own conduct the city has estopped itself, so far as this case is concerned, from denying the existence of the right which it sought to have appraised and condemned.

2. One ground upon which an injunction is sought by the university against the condemnation proceedings

is the want of sufficient certainty in the latter. This question is to be tested by the resolution of the mayor and general council, adopted March 7th, 1892. That resolution is in these terms: " Whereas the mayor and general council, by action adopted December 24th, 1891, adopted a report of the joint committee on streets and bridges, recommending that the Atlanta University be not allowed to erect a bridge over Hunter street, and that condemnation proceedings be had to exhaust whatever property rights the Atlanta University has in the roadway of Hunter street or in the privilege heretofore exercised of 'bridging Hunter street within its grounds: therefore resolved, that George W. Parrott and Andrew J. West are hereby appointed assessors on the part of the City of Atlanta to act in the condemnation of the property rights of the Atlanta University in the roadway of Hunter street and in the privilege heretofore exercised in bridging said street. Resolved further, that the city clerk give the notice usual in such cases to the authorities of the Atlanta University, and that further proceedings be had in conformity to law." As to the roadway of Hunter street this resolution is too indefinite and uncertain. There is nothing to indicate the nature, extent or exercise of any right of the university in the roadway of the street. The thing to be assessed is therefore not pointed out, and no fact or circumstance is referred to to identify or define it. The assessors could not appraise it without first ascertaining what it was, and they are furnished with no mark or attribute by the aid of which to ascertain its nature or extent. In order to condemn to public use such an anomaly as the right of a private corporation in the roadway of a public street, there ought to be some description which would be available for identification. Condemnation proceedings are in their nature proceedings to seize and take. They may be analogized to a

warrant to capture something, and surely a warrant to seize whatever property rights the Atlanta University has in the roadway of Hunter street would be too vague to enable an officer to execute it. As to the privilege heretofore exercised by bridging Hunter street within the grounds of the university, we think the resolution is sufficiently certain and definite. We understand from the record that the bridge erected by the university is there upon the ground to show for itself. There was something by which to measure the property right exercised by the university in having and maintaining this bridge. Nothing is left uncertain except the duration of the right in point of time; and as no limit in that respect is indicated or suggested, the fair presumption would be that the right was one to be enjoyed in perpetuity. No less estate in the easement being expressed, an estate in fee therein should be understood, in harmony with the principle of conveyancing established by statute in Georgia and expressed in §2248 of the code. The resolution, it will be observed, makes no reference to the right of bridging the street elsewhere than at the particular location of the existing bridge. Condemnation of the privilege as heretofore exercised would leave untouched any privilege which the university might have to place and maintain other bridges at other sites. Our conclusion is, that the condemnation proceedings were legal and sufficient relatively to the one object of condemning the property rights of the university in the privilege heretofore exercised by it in bridging the street; and inasmuch as the appropriation of these rights would involve the destruction and discontinuance of the bridge itself, the value of the bridge would have to be included in making compensation for the property rights condemned.

3. All that remains is to determine whether the injunction prayed for should or should not have been

granted. If what we have held above is correct, there is no doubt that an injunction was properly denied as to the bridge privilege, for it was not needed as to that part of the privilege not embraced in the resolution, and the petitioners had no right to it as to the part which was so embraced. It would not have been error, perhaps, to grant an injunction as to the property rights of the university in the roadway of Hunter street, but as the resolution of the mayor and general council was simply nugatory in respect to these rights, no injunction as to them was necessary. We thus see our way to an affirmance of the judgment as a whole.

*Judgment affirmed.*