ZACHRY *et al. v.* MAYOR & COUNCIL OF HARLEM *et al.*

1. A portion of a statute held to be unconstitutional can not operate to engraft by implication into the valid part thereof a grant of power to exercise the right of eminent domain, not conferred by the latter standing alone.
2. A power in a municipal charter "to lay off, to open and lay out such new streets in said town as the public interest may require," without any express authority being given to take private property for such purposes, or any provision which would imply the grant of a power of condemnation, gives to the municipality no right to condemn private property for the purpose of opening a new street.

MAY 16, 1912.

Petition for injunction. Before Judge Hammond. Columbia superior court. October 28, 1911.

*Hamilton Phinizy,* for plaintiffs. *John T. West,* for defendants.

HILL, J. The municipal authorities of the Town of Harlem sought to condemn a strip of land through the property of Zachry and others (hereinafter called the plaintiffs) for the establishment of a new street, and the latter petitioned to enjoin against the proceedings. Upon the hearing, the court refused an interlocutory injunction, and the plaintiffs excepted. The Town of Harlem claimed that the right to condemn was conferred by its charter, approved August 6, 1906 (Acts 1906, p. 797). The sole question at issue, as conceded by counsel for the defendants in error, is whether the municipality has authority under this charter to condemn property for the purpose of opening up a new street. In section 7 the power is given "to lay off, to open and lay out such new streets in said town as the public interest may require; to widen and straighten or otherwise change the streets, lanes, alleys, or sidewalks in said town." Section 32 provides: "And whenever the mayor and council shall exercise the power to lay out and open, to widen, straighten, or otherwise change the streets and alleys in said town, given by this act, they shall appoint two freeholders, and the owner or owners of the lots fronting on said streets or alleys shall, on five days' notice, appoint two freeholders, who shall proceed to assess the damage sustained or the advantage derived by the owner or owners of said lot in consequence of the opening, widening, straightening, or otherwise changing said streets and alleys." This language is followed by provisions for the appointment of an umpire in case the assessors can not agree; for an appeal by either party from their award; and for the enforcement by execution of the final award in cases where it is against the lot owner. Upon the foregoing provisions of the charter depends the right of the municipality to condemn property for the purposes named. It is contended on behalf of the town that even though section 32 be held to be invalid, the general powers given it by section 7, which have been quoted above, by necessary implication confer upon it the power of condemnation. And it is further insisted that although section 32 be invalid as a method of procedure, it is so far operative as to aid in construing the powers intended to be conferred by section 7, and that, so applied, it is

clearly shown that in section 7 the legislature impliedly gave the town the right to condemn land for the purpose of opening a new street. We consider first the contention last stated.

Section 32 must be held to be invalid. At the time it was enacted in 1906 there was in existence the general law of 1894 (now embodied in Civil Code (1910), §§ 5206-5246), providing a uniform method of procedure to be used by all persons or corporations when taking or damaging private property for public uses. Section 32 is an attempt to enact a special law on the same subject, and is repugnant to art. 1, sec. 4, par. 1, of the constitution of Georgia. Civil Code (1910), § 6391. Can this invalid section of the charter aid in the construction of what power the legislature intended to confer on the municipality by granting it authority to open new streets, etc., in section 7, and add to the powers there enumerated an implied right to condemn property? In Cooley's Const. Lim. (7th ed.) pp. 259-260, it is said: "When a statute is adjudged to be unconstitutional, it is as if it had never been. Rights can not be built up under it; it constitutes a protection to no one who has acted under it, and no one can be punished for having refused obedience to it before the decision was made. And what is true of an act void in toto is true also as to any part of an act which is found to be unconstitutional, and which, consequently, is to be regarded as having never been, at any time, possessed of any legal force." Certainly, to incorporate into the legal portion of a statute a power derived by implication from an invalid portion thereof would be to give legal force and effect to the latter. Whether the illegal part can be used for any purpose of construction (for instance, to resolve an ambiguity and to make clear an intent already existing in the legal part of the statute but imperfectly expressed) is not in question and need not be considered. Here it is sought to give additional meaning and effect, by implication, to words in the valid part which do not of themselves carry evidence of the intent sought to be supplied. In State v. Insurance Co. of North America, 71 Neb. 335 (99 N. W. 36, 100 N. W. 405, 102 N. W. 1022, 106 N. W. 767), it was held: "Where a part of an act is unconstitutional, because contravening some provision of the fundamental law, the language found in the invalid portion of the act can have no legal force or efficacy for any purpose whatever." In that case it was also specifically ruled that

the portion of the act held to be invalid could not by implication operate to repeal an existing act, or any portion thereof. And see *Green* v. *Hutchinson,* 128 *Ga.* 379 (57 S. E. 353). We are of the opinion that the language in section 32 can not operate to confer any grant of authority to condemn land for the purpose of opening a street, by reading an implication from that section into the construction of the powers conferred by section 7 on the Town of Harlem.

Stripping the charter of this invalid section, the present case is controlled by the decisions in *Brunswick &c. R. Co.* v. *Waycross,* 94 *Ga.* 102 (21 S. E. 145), and *Georgia Railroad Co.* v. *Union Point,* 119 *Ga.* 809 (47 S. E. 183). These authorities hold, in effect, that the grant to a municipality of the power to lay out, open, widen, straighten, or otherwise change streets in the city, without any express grant of the power of condemnation, or provision in the charter from which an intent to grant this power is necessarily implied, contemplates the acquisition of the property necessary for such purposes by contract, and there is no authority to take it by condemnation proceedings. And this principle is recognized in *Stone* v. *Newborn,* 127 *Ga.* 422 (56 S. E. 516); *Georgia Railroad* v. *Decatur,* 129 *Ga.* 505 (59 S. E. 217). The only case in seeming conflict with the foregoing is that of *Trustees of Atlanta University* v. *Atlanta,* 93 *Ga.* 468 (21 S. E. 74). This apparent conflict arises from the fact that the holding is broadly stated in the first headnote, to the effect, that, under a grant of power to the City of Atlanta "to open, lay out, widen, straighten, or to otherwise change streets, alleys, and squares in said city," the corporate authorities may condemn property for public use. But in the opinion (pp. 476-7) it is made to appear that section 60 of the charter, in which the words above quoted appear, contained also the provision, that, "Whenever the said mayor and general council shall exercise the power above delegated," they shall proceed in a named manner to assess the damages, etc. (This was prior to the general law of 1894, hereinbefore referred to, and the constitutionality of such provisions was not in question.) And, continuing, the court said: "Subsequent amendments of the charter, while they vary somewhat the details of the procedure, do not restrict the power of condemnation itself." One of these amendments, approved December 24, 1886 (Acts 1886, p. 239, § 14),

made provision, that, "Whenever it is proposed that any property be taken for public use," it should be optional with the city to decline to take it if the price fixed, or the award made, was deemed by the general council to be unreasonable. And another amendment, approved December 27, 1890 (Acts 1890-91, vol. 2, p. 446), changing the method of arriving at an award when the city shall desire or may be taking steps to open streets, etc., had the following title: "An act to amend 'an act establishing a new charter for the City of Atlanta,' approved February 28, 1874, and the several acts amendatory thereto, so as to provide for a more perfect method of condemning private property for opening or widening streets, lanes, and alleys in said city, and for other purposes." From the foregoing it will appear that the decision in *Trustees* v. *Atlanta,* supra, was made when construing a general power to open, lay out, etc., streets, considered in connection with additional charter provisions which indicated that it was intended to give the municipality the right to exercise the powers granted, by compelling the property owner to part with his land when needed by the municipality; and the decision was not founded solely on the charter provisions quoted in the first headnote. Whenever the question has depended upon whether a general charter power to lay out, open, widen, or change municipal highways, standing alone, by implication gave the municipality the right to condemn property for such purposes, the decisions have uniformly adhered to the doctrine that such naked powers conferred no such right, but contemplated the acquirement by contract of whatever property was needed for the purposes referred to. As we have pointed out above, the charter of the Town of Harlem, with respect to the powers in reference to streets conferred upon it by section 7, must be construed as though the invalid provisions of section 32 had never been enacted, and so construed, with that section stricken, does not confer on that municipality any power to condemn private property for the purposes of opening a new street. The court below erred in refusing to grant the plaintiffs the injunction for which they prayed.

*Judgment reversed. All the Justices concur.*