19408. FULLER *v.* YETTER.

Decided June 17, 1929.

*Walter DeFore, James C. Estes,* for plaintiff.
*Dasher & Carlisle, Park & Strozier,* for defendant.

Bell, J. Yetter sued Fuller in the municipal court of Macon upon an account for $382.26, and had a verdict for only $150.06. Being dissatisfied, he presented a petition for certiorari, which was sanctioned on October 14, 1927. At the hearing in the superior court on October 26, 1928, the defendant moved to dismiss the certiorari, upon two grounds: (1) Because the notice of the sanction was directed to the defendant in certiorari, "or James C. Estes, his attorney at law," and was served on the latter; whereas the attorney named was never the attorney of record for the defendant in certiorari, although he was a member of the partnership of Walter DeFore and James C. Estes, who were at all times such counsel of record; (2) the petition was improperly sanctioned and should be dismissed under the act of the General Assembly approved August 7, 1925 (Ga. L. 1925, pp. 463-

467), and particularly under sections 1 and 2, purporting to deprive the superior court of Bibb county of jurisdiction of such a proceeding, the petition for certiorari containing no attack upon the constitutionality of the act.

The judge of the superior court overruled the motion to dismiss and, after argument upon the merits, sustained the certiorari, on October 26, 1928. Fuller, the defendant in certiorari, then brought the case to this court.

■ There was no merit in the motion to dismiss the certiorari for alleged defective notice of sanction. Section 5190 of the Civil Code (1910) provides that the plaintiff in certiorari "shall cause written notice to be given to the opposite party in interest, his agent, or attorney." Service upon one member of a partnership is service upon the firm (Civil Code, § 3167); and since the defendant in certiorari was represented by the partnership, service upon it was service upon him. *Render* v. *Hartford Fire Ins. Co.,* 33 *Ga. App.* 716 (2) (127 S. E. 902). The cases of *Green* v. *Willingham,* 100 *Ga.* 224 (28 S. E. 42), and *Floyd* v. *Boyd,* 16 *Ga. App.* 43 (84 S. E. 494), are not in point. In those cases the question was in reference to identity of parties. In the present case it relates to service, or rather to the manner of perfecting it.

■ The second ground of the motion to dismiss the certiorari was predicated upon the decision of the Supreme Court in *Hutchings* v. *Roquemore,* 164 *Ga.* 637 (139 S. E. 216), wherein it was held, in effect, that, since the petition for certiorari failed to draw into question the constitutionality of the act of 1925 (Ga. L. 1925, p. 463), the act would be treated as valid, and "prevented the grant of the certiorari sought." Under the authority of that decision the judge of the superior court should perhaps have refused to sanction the petition for certiorari. But before the motion was made to dismiss it the Supreme Court, to wit, on August 17, 1928, held the act of 1925 to be unconstitutional. See *Empire Investment Co.* v. *Hutchings,* 166 *Ga.* 749 (144 S. E. 209). In view of that adjudication the trial judge was right in treating the act as void, notwithstanding the petition for certiorari had not questioned its validity, and because of that fact the case might have been dismissed or refused consideration at some earlier stage.

In *Green* v. *Hutchinson,* 128 *Ga.* 379 (2) (57 S. E. 353), it was said: "A legislative act of a general nature, and intended to

have uniform operation throughout the State, duly adjudicated to be unconstitutional and inoperative, can not be given effect in any part or subdivision of the State or of any county. An unconstitutional act of the legislature is not law. It is absolutely void." In *Ray* v. *City of Lavonia,* 141 *Ga.* 626 (81 S. E. 884), the Supreme Court held that the provision of the act of 1897 (Ga. L. 1897, p. 82, Civil Code of 1910, § 446), having reference to the place of hearing in a proceeding to validate bonds, was unconstitutional in so far as it authorized a hearing outside of the county in which the municipality proposing to issue the bonds was located. In that case there was a due and timely attack upon the constitutionality of the provision in question. In the later case of *Murray* v. *City of Tifton,* 143 *Ga.* 301 (84 S. E. 967), the question of venue was again urged, but without any attack upon the act relating thereto. However, the court held that, since the decision in the *Ray* case had adjudicated that the provision purporting to authorize jurisdiction in a county other than that of the municipality was unconstitutional, it was not necessary for the plaintiffs in error in the *Murray* case to repeat the attack.

In Cooley's Constitutional Limitations (7th ed.), pp. 259-360, it is said: "When a statute is adjudged to be unconstitutional, it is as if it had never been. Rights can not be built up under it; it constitutes a protection to no one who has acted under it, and no one can be punished for having refused obedience to it before the decision was made. And what is true of an act void in toto is true also as to any part of an act which is found to be unconstitutional, and which, consequently, is to be regarded as having never been, at any time, possessed of any legal force." This statement was quoted with implied approval in *Zachry* v. *Mayor &c. of Harlem,* 138 *Ga.* 195 (75 S. E. 4). See also *Griffin* v. *Sisson,* 146 *Ga.* 661 (92 S. E. 278); *Lampkin* v. *Pike,* 115 *Ga.* 827, 829 (42 S. E. 213, 90 Am. St. R. 153); 12 C. J. 800.

Under the circumstances of this case, and in view of the authorities cited, this court will decline to reverse the judgment of the trial judge in which he refused to be bound by the act of 1925, after the Supreme Court had declared it to be unconstitutional and void.

■ Nor can we say that the court erred in sustaining the certiorari. The suit grew out of a contract for plumbing, and in-

cluded a claim of $150.06 as the alleged cost price of materials and a charge of $202.19 for labor. The plaintiff contended that after having partially performed the contract he was ordered to quit and was not permitted to finish it. The claim for the cost of the materials was fully supported by the evidence, and, as shown above, the verdict was for the amount of such claim. The real question, therefore, is whether the evidence would have authorized the finding of a further amount for labor; because if the evidence would have warranted a better verdict for the plaintiff, this court will affirm the judgment sustaining the certiorari, it being the first grant of a new trial, and in doing so will make no adjudication as to the merit of any of the special assignments of error in the petition for certiorari. *National Union Fire Ins. Co.* v. *Ozburn, 38 Ga. App.* 276 (143 S. E. 623).

The plaintiff in error contends that under the judge's answer to the certiorari there was no evidence which would have authorized any finding in the plaintiff's favor for the value of the labor of the plumbers or workmen who were placed upon the job. The petition for certiorari contained the testimony of numerous witnesses, a part of which purported to tell of the quantity of work done and of the number of hours spent by the workmen in doing it; but in the answer to the certiorari the judge said: "The testimony with reference to the time charged was in substance: The general custom in Mr. Yetter's office was, an employee would announce in hearing of the young lady bookkeeper, when he was leaving the office or shop, that he was going to work on a certain job, of which she would make a note, and this same workman would either return during working hours and report that he was off of the named job, or he was charged on the books as having worked at the job in question during the entire work day. According to my recollection, no witness testified further than this. Only one witness who was supposed to have worked on this job testified, he being George Lewis, and he testified no more than the general custom in the office and shop. He did not testify that he actually did the work as shown by the cards on the Fuller job, or whether he made correct and accurate reports to the bookkeeper, or to Mr. Yetter, or to any one else, as basis for admitting in evidence the time sheets. The time sheets being offered as a whole and together and not separately." In other respects (with one exception

not here material) the answer stated that the petition set forth "substantially all the proceedings had on the trial."

Unquestionably the case must be measured and determined by the answer to the certiorari (*Hesterly* v. *Ingram,* 18 *Ga. App.* 532 (2), 89 S. E. 1049; *Louisville & Nashville R. Co.* v. *Tate,* 19 *Ga. App.* 507, 91 S. E. 883); but as we construe the answer, it shows merely that there was no evidence as to *the time or number of hours* devoted to the contract, and does not fail to verify the testimony set forth in the petition for certiorari as to the *amount or quantity of work done.* On the other hand, we think there was a complete verification of all the evidence set out in the petition for certiorari upon the latter subject. To give consideration to that evidence only, we are of the opinion that the jury could have found a larger amount in favor of the plaintiff.

The plaintiff testified: "I agreed to renew two bathrooms, to extend the waste on closets and tubs on the second floor, to install all hot and cold water lines, to put in eight new stops and wastes, to install new sink wastes to four sinks, to install gas lines on the second floor, to install hot-water pipes for boilers, to rehang sink waste line under the house, to piece out four-inch stacks, and to rerun all water-pipes under the house. I, through my agents and employees, actually did the roughing in of the work just enumerated. . . The work was done and the material furnished as agreed upon, up to and including the point of roughing in the jobs. At this juncture Mr. Fuller had Monroe Arnold call on me for statement of charges for my services up to date. I then furnished Mr. Fuller a bill showing $382.26 due, of which $180.07 [including a special charge above the cost price] was due for the materials furnished and $202.19 was due for the labor done on said apartment-house job. . . Mr. Fuller had me make several changes from the original understanding as to the plumbing that was to be done. He had us change all the lines from the attic and rerun them under the house. He also had us change all the half-inch pipes to three-quarter-inch pipe under the house. Mr. Fuller and I went over this work several times together, and he made several changes."

George Lewis testified: "I am a plumber, and was Mr. George F. Yetter's plumber in charge of the Grant P. Fuller job at No. 134 Park Place in the city of Macon, Bibb county, Georgia. This

was the job for renewing two bathrooms, extending the waste on closets and tubs on second floor, installing all hot and cold water lines, putting in new stops and wastes, installing new sink wastes to four sinks, installing gas lines on second floor, installing hot-water pipes for boilers, rehanging sink waste line under house, piecing out four-inch stacks, and rerunning all water-pipes under apartment house at No. 134 Park Place, in Macon, Georgia, the apartment house of Grant P. Fuller. The work above outlined was roughed in to my own knowledge by me and my assistants."

The jury were fully informed as to the nature and character of the work done, and as to all the attendant circumstances, and were not obliged to have a record of the time in order to arrive at a conclusion as to the value of the labor. Questions of value are peculiarly for the jury, where there is any data in evidence upon which they may exercise their "own knowledge and ideas." The evidence did not demand a finding that the plaintiff should have no more than $150.06, but a verdict for a larger amount would have been authorized. *Dixon* v. *Cassels Co.,* 34 *Ga. App.* 478 (3) (130 S. E. 75), and cit.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*